UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------x

3/7/14

RUBEN ANTONIO ARIAS JAVIER,

                  :

          Petitioner,

                  :

       -against-

                  :

UNITED STATES OF AMERICA,

                  :

          Respondent.
-------------------------------x

REPORT & RECOMMENDATION

11 Civ. 5550 (LAP)(MHD)
07 Cr. 1186 (LAP)(MHD)

TO THE HONORABLE LORETTA A. PRESKA, U.S.D.J.:

Following a brief jury trial in November 2008, petitioner Ruben Antonio Arias-Javier was convicted in this court of a single count of conspiracy to distribute a controlled substance known as Ecstasy. The court (the Hon. Richard J. Holwell) then sentenced Mr. Arias on May 20, 2009 to a prison term of 96 months and a supervised release term of three years. Following the affirmance of his conviction by the United States Court of Appeals on September 26, 2010, United States v. Arias-Javier, 392 Fed. App'x. 896 (2d Cir. 2010), petitioner has moved to vacate his conviction under 28 U.S.C. § 2255.

In seeking relief, Mr. Arias asserts three claims. First, he argues that the testimony of cooperating defendant Rony Ortiz should have been suppressed because the Government had agreed to

1

offer Ortiz leniency in sentencing in exchange for his testimony, purportedly in violation of the anti-bribery statute at 18 U.S.C. § 201(c). (Pet.'s Addendum to § 2255 Mot. ("Pet. Addendum") at 2-7). Arias's second claim is that he was denied a fundamentally fair trial because the prosecutor stated to the jury in rebuttal summation, regarding Ortiz, that he "told you the truth". (Id. at 10-11). Petitioner's third claim is that he was denied "actual or constructive" effective assistance of trial counsel on "hundreds of issues" (id. at 13), but more specifically he complains that his attorney either did not disclose a plea offer (id. at 14) or did not seek a plea agreement from the Government even though "[f]rom the outset of the arrest petitioner was cooperative with the Government", and that she did not adequately warn petitioner of the risks of going to trial. (Id. at 12, 13). He also complains, in passing and without explanation, that counsel "fail[ed] to conduct pretrial discovery" and failed to "advise defendant concerning . . . sentencing." (Id. at 15). The Government of course opposes.

For the reasons that follow, we recommend that the motion be denied.

2

The Trial

The evidence at trial reflected that Arias's uncle Augustine, who was living in Amsterdam, had planned to send 15,000 Ecstasy pills to Arias in the Bronx by Fedex in August 2007. (Tr. 113-14). According to testimony by Arias's cousin and co-defendant, Rony Ortiz, before the package was sent Arias persuaded Rony to obtain the services of someone else to be the addressee, and Rony offered money to a third man, named Ricardo Ortiz, to receive and sign for the package. (Id. at 113-17). Since the nature of the contents had become known to law enforcement before the package left the Netherlands, Drug Enforcement Administration agents were able to surveil its delivery by an undercover agent directly to Ricardo Ortiz, who signed for it and then placed it in a van driven by Arias -- with Rony Ortiz present -- on a street in the Bronx. (Id. at 42-43, 73, 232-33). The agents subsequently arrested Arias, Rony Ortiz and Ricardo Ortiz. (Id. at 234).

ANALYSIS

We address petitioner's three claims in the order in which he asserts them. All three are meritless, and two are barred from consideration for procedural reasons.

3

I. The Plea Deal for Rony Ortiz

As noted, Rony Ortiz agreed after his arrest to cooperate with the Government and to testify against his cousin. As he admitted during his direct testimony, he had a prior criminal record, had been arrested as an accomplice of Arias, and had pled guilty to a parallel conspiracy charge pursuant to a cooperation agreement in the hope of receiving leniency. (Id. at 106-07, 109-11). Based on this record, Arias contends that the Government gave Rony consideration in exchange for his testimony and that this quid pro quo violated section 201(c) of the United States Criminal Code. This argument is both procedurally barred and groundless.

Arias was free to raise this claim on his appeal from his conviction, but he chose not to do so. Indeed, his only claim on appeal concerned the prosecutor's reference in summation to the testimony of Rony Ortiz as truthful. See Arias-Javier, 392 Fed. App'x. at 898. Having failed to raise this bribery argument on appeal, Arias cannot assert it on his section 2255 motion, since this procedural vehicle may not be used as a substitute for an appeal, see, e.g., Harrington v. United States, 689 F.3d 124, 129 (2d Cir. 2012), and Arias fails to show cause for his omission and fails as well to demonstrate that failure to consider the claim

4

would trigger a fundamental miscarriage of justice. <u>See</u>, <u>e.g.</u>, <u>Massaro v. United States</u>, 538 U.S. 500, 504 (2003); <u>Harrington</u>, 689 F.3d at 129; <u>United States v. Perez</u>, 129 F.3d 255, 260-61 (2d Cir. 1997).

In any event, Arias's claim is meritless. Section 201(c)(2) provides in pertinent part:

> Whoever
>
> . . . .
>
> (2) directly or indirectly gives, offers or promises anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial . . . before any court . . .
>
> shall be fined under this title or imprisoned for not more than two years or both.

Not surprisingly, the Second Circuit and all other circuit courts that have considered the question have held that this provision does not apply to cooperation agreements between Government prosecutors and potential witnesses, and still more broadly does not apply to prosecutors. <u>See</u>, <u>e.g.</u>, <u>United States v. Stephenson</u>. 183 F.3d 110, 118 (2d Cir. 1999); <u>United States v. Smith</u>, 196 F.3d 1034, 1038-40 (9th Cir. 1999) (citing cases). <u>Accord</u>, <u>e.g.</u>, <u>United States v. Crineo</u>, 31 Fed. App'x. 760, 761 (2d Cir. 2002).

Moreover, the agreement in this case between the Government and Rony Ortiz was a garden-variety cooperation contract under which the prosecutor reserved his discretion whether to seek a departure from the applicable sentencing guidelines under United States Sentencing Guidelines § 5K1.1. Furthermore, the agreement recited that the decision as to the appropriate sentence would be entirely up to the trial court, an understanding that Ortiz acknowledged in his testimony. (See Resp. Binder 4th Ex. -- Oct. 20, 2008 letter from AUSA Michael M. Rosensaft at 2-3; Tr. 110). There is nothing in this unexceptionable arrangement that provides any basis for a due-process claim or an argument that its use here violated any legal right of the defendant.

## II. The Summation Claim

Arias next recites the fact that the prosecutor, in summation, referred to Rony Ortiz as having "told you the truth" in his testimony. (Pet. Addendum 10; see Tr. 313). According to petitioner, this comment amounted to improper bolstering and denied him a fundamentally fair trial.

The short answer to this argument is that the Second Circuit has already squarely rejected it. This was the one ground that

6

Arias raised in support of his appeal from his conviction, and our circuit court held otherwise. The panel first observed that a defendant challenging a conviction based on a prosecutor's remark bears "a heavy burden", Arias-Javier, 392 Fed. App'x. at 898 (quoting United States v. Locascio, 6 F.3d 924, 925 (2d Cir. 1993)). It then held that no inference of misconduct was justified in this case, since the comment, made in a rebuttal summation, was "clearly not the prosecutor's profession of a personal belief but, rather, a conclusion that he urged the jury to draw from the totality of the evidence." Id. at 899. In this regard, it noted that the prosecutor was responding to defense counsel's preceding attack on the credibility of the Government's witness, and that in the prosecutor's summations he had acknowledged that it was the jury's role to assess credibility and had asked the jurors to "carefully and thoughtfully consider [the witness'] testimony", to recall "his demeanor [and] how he answered the questions" and to "[t]hink back to the little details he told you about." (Tr. 293, 313). See Arias-Javier, 392 Fed. App'x. at 899. The Court further observed that even if it had deemed the comment to be improper, it would have affirmed because the purported error had not caused "substantial prejudice", particularly since Judge Holwell had sustained defense counsel's objection and later instructed the jurors that they alone were responsible for assessing witness

credibility and that "[a]ny opinion by counsel that a witness was or was not telling the truth is irrelevant and should be given . . . no weight." (Tr. 320). See 392 Fed. App'x. at 899.

Since the Court of Appeals has already ruled on this issue, petitioner's claim cannot be sustained. In any event, even if the matter were open for new consideration, we would reject the petitioner's argument on the same basis as the Court of Appeals.

### III. Ineffective Assistance of Counsel

Arias's remaining claim is that his trial attorney's performance was so deficient as to infringe on his right to the effective assistance of counsel. Although this claim is vaguely -- and extremely broadly -- stated, we read the pro se papers of Mr. Arias as complaining that he was not given a plea deal, which would presumably have lowered his sentence. For this outcome he blames his attorney, who -- he asserts -- either did not tell him forcefully enough that he risked conviction if he did not plead guilty to some unspecified charge, or failed to seek or obtain a plea deal from the Government or else did not disclose a plea offer from the prosecutor.

8

Before assessing this claim, we briefly summarize the basic Sixth Amendment standards applicable to this type of claim.

### A. Legal Standard

The Supreme Court has established a two-part test for evaluating claims of ineffective counsel: (1) counsel's performance must be shown to have been deficient, and (2) that deficiency must be shown to have prejudiced the defendant. See Strickland v. Washington, 466 U.S. 668, 687 (1984); accord Lafler v. Cooper, 132 S.Ct. 1376, 1384 (2012) (citing Strickland, 466 U.S. at 687). The performance prong requires that a defendant show "that counsel's representation fell below an objective standard of reasonableness" and committed "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Harrington v. Richter, 131 S.Ct. 770, 787-88 (2011) (quoting Strickland, 466 U.S. at 687). To satisfy the second prong, a defendant must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Lafler, 132 S.Ct. at 1384 (quoting Strickland, 466 U.S. at 694).

9

It bears emphasis that the Strickland standard is quite deferential, and that a claim of constitutional dimension does not arise unless a lawyer's error is so egregious as to amount to a failure to provide minimal professional representation. Thus, the court weighing an ineffective-assistance claim "must judge the reasonableness of counsel's challenged conduct," and must "determine whether, in light of all of the circumstances, [counsel's] identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690; accord, e.g., Jameson v. Coughlin, 22 F.3d 427, 429 (2d Cir. 1994). In making this determination, "[e]ven under de novo review, the standard for judging counsel's representation is a most deferential one", and courts must resist the temptation to "second-guess counsel's assistance after conviction or adverse sentence." Harrington, 131 S.Ct. at 788 (citing Strickland, 466 U.S. at 689).

Under this standard, counsel's tactical decisions, even those that go awry, will not ordinarily provide the factual predicate for a Sixth Amendment claim. See, e.g., United States v. Eisen, 974 F.2d 246, 265 (2d Cir. 1992); United States v. Nersesian, 824 F.2d 1294, 1320-21 (2d Cir. 1987); United States v. Cruz, 785 F.2d 399, 404-07 (2d Cir. 1986). Moreover, attorney error, whether through "ignorance or inadvertence", does not by itself constitute a Sixth

Amendment violation. See, e.g., Coleman v. Thompson, 501 U.S. 722, 755 (1991); Marone v. United States, 10 F.3d 65, 67 (2d Cir. 1993) (per curiam).

The burden of proving prejudice is equally onerous. As noted, a petitioner must demonstrate a "reasonable probability" that, but for counsel's unprofessional errors, the result of the proceeding would have been different. "A reasonable probability is one sufficient to undermine confidence in the outcome of the trial or appeal." Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001) (citing Strickland, 466 U.S. at 694).

In assessing a challenge to an attorney's advice whether to enter a guilty plea, it is necessary that we focus on counsel's performance in the plea-bargaining process. See, e.g., Lafler, 132 S.Ct. at 1384. Apart from the requirement that the defendant demonstrate constitutionally deficient performance, "[i]n the context of pleas a defendant must show [that] the outcome of the plea process would have been different with competent advice." Id. In this regard, the Supreme Court has acknowledged that "[p]lea bargains are the result of complex negotiations suffused with uncertainty", which require defense attorneys to "make careful strategic choices in balancing opportunities and risks." Premo v.

11

Moore, 131 S.Ct. 733, 741 (2011). The opportunities might include pleading to a lesser charge and obtaining a more favorable sentence compared with what could be the outcome at trial, and the risks include losing the chance for a defense verdict or entering an early plea before the prosecution discovers that its case is getting weaker. Id.

If a plea offer is extended by the Government, the defense attorney must communicate it to her client. See, e.g., Cullen v. United States, 194 F.3d 401, 404 (2d Cir. 1999). Morever, in that circumstance "[d]efense counsel has a constitutional duty to give [her] professional advice on the crucial decision of whether to accept a plea offffer from the government." Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003). In the absence of such an offer, however, it bears emphasis that the failure of a defense attorney to seek out a plea offer from the Government is not, in itself, tantamount to ineffective assistance of counsel where there is no showing that the Government would have agreed to a plea bargain acceptable to the defendant. See, e.g., Brown v. Doe, 2 F.3d 1236, 1246 (2d Cir. 1993); accord, e.g., Quinones v. McClellan, 101 F.3d 107, 1996 WL 107240, at *2 (2d Cir. Mar. 8, 1996); see also Reich v. United States, 2010 WL 10373, at *6 (E.D.N.Y. Jan. 4, 2010).

For the reasons that follow, we find that petitioner has failed to satisfy the standard for either prong of the <u>Strickland</u> test.

## B. <u>Assessment of the Claim</u>

Petitioner asserts in very general terms that his attorney was deficient in failing to disclose or obtain a plea offer for him and in somehow mishandling pretrial discovery and the sentencing process. Since Arias offers no information to buttress his criticisms regarding discovery and sentencing, these aspects of his claim fail at the outset. We therefore address at somewhat greater length only his complaint regarding the absence of a plea deal.

On the question of a plea, Arias seems to assert several contradictory complaints. At one point he says that his attorney did not disclose a plea offer by the Government. (Pet. Addendum 14). At several other points he seems to say that his lawyer did not tell him the full extent of the risk from proceeding to trial and thus did not persuade him to seek a deal (<u>id.</u> at 14-15) and, perhaps alternatively, that she also did not obtain a plea deal from the Government even though Arias was "cooperative with the Government". (<u>Id.</u> at 12). The purported injury that he claims is

13

that he was sentenced to eight years whereas his cousin Rony received only a three-year sentence. (Id. at 7).

Despite the sketchy nature of these assertions in Arias's motion, we chose to expand the record, directing the Government and former defense counsel to offer declarations reflecting "whether any plea offer was requested by, or made to, counsel for Mr. Arias . . . and, if so, what discussions took place between counsel about the request or offer", as well specifying (by former defense counsel) "what advice, if any, she provided to Mr. Arias concerning the availability or desirability of a plea deal". (Order, dated Dec. 27, 2013 (Dkt. No. 15) ("Dec. 27, 2013 Order") at ¶¶ 1-2). We have received submissions from both the prosecutor and former defense counsel. (Decl. of Michael M. Rosensaft, Esq., dated Jan. 6, 2014 ("Rosensaft Decl."); Aff. of Toni Messina, Esq., dated Jan. 8, 2014 ("Messina Aff."). As for Arias, although invited to respond (Dec. 27, 2013 Order ¶ 3), he has failed to do so.

With this record before us, we address the various versions of petitioner's Sixth Amendment claim. We find all of them to be meritless.

14

For a defendant to satisfy his burden when claiming ineffective assistance by counsel in the plea-bargaining process, he must demonstrate "a reasonable probability that but for [his attorney's] deficiencies, [he] would have pled guilty." Purdy v. United States, 208 F.3d 41, 49 (2d Cir. 2000). Moreover, to meet that burden the defendant must proffer "some objective evidence other than defendant's self-serving assertions to establish that [he] would have pled guilty had he received constitutionally effective assistance of counsel." Crisci v. United States, 108 Fed. App'x. 25, 28-29 (2d Cir. 2004).

Insofar as Arias may be understood to complain that his attorney did not advise him of an actual plea offer, that complaint must be rejected. He proffers no evidence that such an offer was ever made, and both the Government and defense counsel disclaim any knowledge of such an offer; rather, defense counsel sought to determine whether Arias was safety-valve eligible, which depended on his having played only a minimal role and cooperating fully with the Government, but her client refused to meet with the prosecutor. (Rosensaft Decl. ¶¶ 3-4; see Messina Aff. ¶¶ 4-5 (counsel raised question of safety-valve eligibility but Arias did not want to meet the prosecutor)). As for whether any offer was made, as they recount, the Government provided only a Pimentel letter to defense

15

counsel, and that document disclaimed any plea offer or agreement and simply advised that a Sentencing Guideline analysis yielded a projected sentencing range of 87 to 108 months. (Rosensaft Decl. ¶¶ 3-4 & Ex. A; Messina Aff. ¶ 5). In short, there is zero evidence that a plea offer was made and then concealed by counsel.

Apart from that theory, petitioner only asserts in conclusory terms that his attorney either should have pressured him more forcefully to consider a plea deal or should have made efforts (or greater efforts) to elicit a plea offer from the Government. These generalized assertions fall well short of an evidentiary showing sufficient to sustain a potential claim premised on the contention that counsel performed below a constitutional minimum and that Arias was prejudiced by this deficiency.[1]

In any event, as noted, in an effort to create a record that might shed light on petitioner's vague complaints in this respect, we requested the submission of declarations from defense counsel

---

[1] We also note that petitioner's comparison of his sentence with that of Rony Ortiz is plainly misguided since Rony apparently played a lesser role in the offense -- indeed, it was Javier who inveigled Rony to join the conspiracy (Tr. 113-14) -- and hence it was entirely plausible that the Government would have been more willing to offer Rony a cooperation agreement with the attendant lesser sentence.

16

and from the Government, as well as petitioner, to clarify not only whether a plea offer was ever extended, but also what communications the defense attorney had with the prosecutor and her client about the potential for a guilty plea and/or plea bargain. (Dec. 27, 2013 Order). See generally Pham, 317 F.3d at 185-88 (Sotomayor, C.J. concurring) (emphasizing desirability of fleshing out record pertaining to Sixth Amendment allegations). The submissions by the Government and defense counsel -- which petitioner has not contradicted although given the opportunity to respond -- reinforce our conclusion that his Sixth Amendment claim premised on the absence of a plea agreement is baseless.

Although the Government supplied Arias, through his counsel, with a Pimentel letter, no plea offer was extended to Arias or requested by him. (Rosensaft Decl. ¶¶ 3-4 & Ex. A). Former defense counsel, Toni Messina, Esq., reports -- based on a review of her file from the case -- that she had discussed the case and a possible plea with the prosecutor, who confirmed that Arias was potentially safety-valve eligible. According to Ms. Messina, since she had had the safety-valve communication with the Assistant United States Attorney, she necessarily would have then discussed the possibility of a plea with her client, but she recalls "that Arias did not want to meet with the prosecutor to discuss his role

17

in the offense." (Messina Aff. ¶ 4). That refusal would of course preclude application of the safety-valve provision, since cooperation and full disclosure are prerequisites for such a benefit. 18 U.S.C. § 3553(f). See, e.g., United States v. Murillo, 540 Fed. App'x. 63, 65, 2013 WL 5926888, at *2 (2d Cir. Nov. 6, 2013); United States v. Adekanbi, 675 F.3d 178, 184-85 (2d Cir. 2012). Moreover, although petitioner stated in his petition and reply that he was "cooperative" with the Government (Pet. Addendum 12; Pet. Rebuttal Response, dated Nov. 22, 2011 (Dkt. No. 6) ("Pet. Reply") at 7), this conclusory assertion is unsupported by any evidence, is contradicted by his own counsel, and is undercut by the absence from the trial record of any evidence suggesting that he had ever made an inculpatory statement.

Ms. Messina goes on to report that she has never advised any client, including Arias, that if he went to trial he would win. Rather, she would have discussed the pros and cons of pleading, including in Arias's case the fact that a plea would make him deportable. She also observes, based on her notes, that there were apparently some favorable factors for the defense, and that she would have explained those to him, as well as the risks of going to trial, which included a likely longer sentence than he would receive after a plea. (Messina Aff. ¶¶ 6-8). Finally, she notes

18

that she learned only "late in the case development" that Arias's co-defendant and cousin Rony Ortiz was cooperating with the Government and would testify against petitioner. She reports that she would have discussed this adverse development with Arias, telling him that it would increase the likelihood of a conviction; as she puts it, "[]t is my practice to discuss any eve-of-trial developments with my clients." (Id. at ¶ 9).

In view of the absence of any specific evidentiary basis for petitioner's complaints about his trial counsel's advice and her dealings with the Government before trial, and the unrebutted testimony of both that attorney and the prosecutor, there is no basis for sustaining his claim insofar as it is premised on the assertion that he was badly advised or that counsel failed to pursue a plea deal with sufficient vigor. Arias was apparently unwilling to cooperate during limited plea discussions -- thus triggering the application of at least a five-year mandatory minimum, and a guideline range of 121 to 151 months (Sentencing Tr. 10) -- and until late in the process neither he nor his attorney were aware of the fact that Rony Ortiz would plead and testify against him. By that time, it was presumably too late to obtain a favorable deal since the Government's case was plainly and substantially strengthened by Rony's cooperation. Moreover, given

Arias's refusal to deal directly with the prosecutor, there is no reason to infer that a more aggressive approach by counsel would have elicited a plea offer that Arias was prepared to accept. See, e.g., Raysor v. United States, 647 F.3d 491, 495 (2d Cir. 2011); Cullen, 194 F.3d at 404. In any event, petitioner identifies no specific action or failing by counsel that would suggest a Sixth Amendment violation. See generally Purdy, 208 F.3d at 43-49 (rejecting Sixth Amendment claim where counsel advised client to carefully consider his options but did not press him to take plea offer). In view of this conclusion, there is also no need for an evidentiary hearing on the matter. See, e.g., Pham, 317 F.3d at 184 (Pooler, C.J.) (citing Chang v. United States, 250 F.3d 79, 85-86 (2d Cir. 2001) (trial court has discretion whether to hold hearing)); id. at 191-92 (Kaplan, D.J., concurring) (citing Machibroda v. United States, 368 U.S. 487, 495-96 (1962)).

CONCLUSION

For the reasons stated, we recommend that the section 2255 motion of Mr. Arias be denied.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file

20

written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Loretta A. Preska, Room 2220, and to the chambers of the undersigned, Room 1670, 500 Pearl Street, New York, New York 10007-1312. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e); Thomas v. Arn, 470 U.S. 140, 150-52 (1985); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).


DATED: New York, New York
       March 7, 2014



                              RESPECTFULLY SUBMITTED,


                              _____
                              MICHAEL H. DOLINGER
                              UNITED STATES MAGISTRATE JUDGE

21

Copies of the foregoing Report and Recommendation have been mailed today to:

Mr. Ruben Antonio Arias-Javier
# 90068-054
FCI Pollock
P.O. Box 4050
Pollock, La. 71467-4050

Benjamin Naftalis, Esq.
Assistant United States Attorney
  for the Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Toni M. Messina, Esq.
100 Lafayette Street
Suite 502
New York, New York 10007